IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CODY LANE,

        Plaintiff,

        v.

MARION COUNTY, a political subdivision of the state of Oregon, the MARION COUNTY SHERIFF'S OFFICE, JASON MYERS, individually and in his official capacity as Marion County Sheriff, and CRAIG CUNNINGHAM, individually,

        Defendants.

Case No. 6:19-cv-287-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Cody Lane brings this action stemming from an internal investigation by the Marion County Sheriff's Office following a citizen's report that Plaintiff followed his girlfriend home from a bar in a marked patrol car while on duty. Defendants move for summary judgment. ECF No. 25. Defendants' motion is GRANTED.

**BACKGROUND[1]**

Plaintiff served as a patrol officer in the Marion County Sheriff's Office for over ten years. On the evening of November 24, 2017, Plaintiff worked the graveyard shift while his

---

[1] The Court views the facts in the light most favorable to Plaintiff.

1 – OPINION AND ORDER

girlfriend celebrated her birthday at the Red Apple bar. In the early hours of November 25, 2017, Plaintiff's girlfriend asked Plaintiff to follow her home as she had a malfunctioning headlight. Plaintiff, already in the area, agreed to follow her home as they intended to spend Plaintiff's lunch break together. Several witnesses outside the bar observed Plaintiff's patrol car follow the girlfriend's car out of the parking lot. One of the witnesses filed a report with the Sheriff's Office.

On November 30, 2017, Plaintiff received a Notice of Investigation. Defendant Craig Cunningham, a Sergeant in the Sheriff's Office, was the lead investigator in the internal investigation of Plaintiff. Cunningham conducted 14 interviews, including of Plaintiff and his girlfriend. On March 14, 2018, Plaintiff received a pre-termination letter. After a hearing, Plaintiff was terminated effective April 9, 2018. Plaintiff's Termination Letter noted Plaintiff "purposefully meant to deceive or hide the fact that you were escorting your girlfriend home from a bar." Compl. ¶ 14 (emphasis omitted). Sheriff Meyers forwarded the allegation of untruthfulness to the Marion County District Attorney's Office, who placed Plaintiff on the *Brady* list.

Through his union, Plaintiff filed a grievance and the parties went to arbitration on September 5-7, 2018. Fourteen witnesses testified during the arbitration. On January 7, 2019, the arbitrator ordered Plaintiff reinstated. Despite the arbitrator's finding that Plaintiff was not untruthful, the Marion County District Attorney refused to remove Plaintiff from the *Brady* list. Plaintiff currently works not as a patrol officer, but in the Marion County Jail.

Plaintiff brings claims under the First and Fourteenth Amendments, alleging Defendants violated his rights to due process and equal protection. Plaintiff argues:

2 – OPINION AND ORDER

> Specifically, the Defendants violated Plaintiff's First Amendment liberty interest in pursuing his chosen profession, his property interest in his chosen employment, and his Fourteenth Amendment rights to due process and equal protection. Defendant's conduct in basing their investigation on misrepresentations and twisted witness statements, in testifying falsely at Plaintiff's arbitration, and in willfully failing to make Plaintiff whole, pursuant to Arbitrator Marr's order caused these violations.

Pl.'s Resp. 6; ECF No. 51.

Plaintiff also brings state law claims for wrongful discharge, defamation, and intentional infliction of emotional distress.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Plaintiff's Procedural Due Process Claim

Plaintiff alleges that the investigation itself, his termination, and Defendants' conduct following the arbitration order violated his procedural due process rights. To prevail on these

3 – OPINION AND ORDER

claims, Boyd must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted). Each setting invites its own assessment under a *Mathews* analysis and the only general statement that can be made is that persons holding interests protected by the due process clause are entitled to "some kind of a hearing." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 546 (internal citations omitted).

Here, Plaintiff received a Notice of Investigation less-than one week after the incident in question. O'Kasey Decl. Ex. 5. The Notice informed Plaintiff of the citizen complaint regarding possible violations of specific policies. The Notice provided:

> During an incident on or about November 25, 2017, you are alleged to have brought disrepute to the Marion County Sheriff's Office. You are alleged to have followed a female away from a bar in a marked County vehicle. The complainant alleges hearing a conversation in which you stated, "Going to come follow you home so that Stayton doesn't get your ass."

O'Kasey Decl. Ex. 5.

At the conclusion of the investigation, Plaintiff received a pre-termination notice which set forth the charges and, pursuant to the collective bargaining agreement, set a time for the Plaintiff to attend a hearing and respond to the charges. O'Kasey Decl. Ex. 6; ECF No. 26. Plaintiff was provided a copy of the investigation and notified of his right to representation at the

4 – OPINION AND ORDER

due process hearing. After the hearing, Plaintiff received a written notice on April 9, 2018 that he was being terminated because his behavior on the night in question:

> brings into question your integrity and honesty. The investigation found that you "purposefully" meant to deceive or hide the fact that you were "escorting" your girlfriend home from a bar. You admitted that texting the message "*Not a word to them about what I am doing,*" was intended to make sure that no one knew or understood what you were doing because you didn't want it to "*look bad.*" We clarified during the Due Process hearing that you understood that to mean you knew that you should not have been escorting her home from the location she was at.

O'Kasey Decl. Ex. 7.

Pursuant to his rights under the collective bargaining agreement, Plaintiff arbitrated his termination. Following that multi-day arbitration, the arbitrator ordered Plaintiff reinstated to his former position, along with any back pay.

Plaintiff received an abundance of process. Plaintiff was interviewed during the internal investigation, received notice of the charges, and presented evidence at the Due Process hearing. Following his termination, Plaintiff successfully arbitrated his termination and was reinstated with back pay. To the extent Plaintiff argues that the investigation simply 'got it wrong,' that argument fails. "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350 (1976). As Plaintiff received multiple opportunities to be heard, and ultimately succeeded in his bargained-for arbitration hearing, his procedural due process claim fails. The Court arrives at this conclusion even assuming, without deciding, that the internal investigation incorrectly concluded that Plaintiff was untrustworthy.

/ / / /

/ / / /

5 – OPINION AND ORDER

## II. Plaintiff's Substantive Due Process Claim

Plaintiff argues Defendants' determination that he was untrustworthy, and his subsequent inclusion on the *Brady* list, violated his right to substantive due process; i.e., the right to work in his chosen occupation. In the Ninth Circuit, substantive due process claims in the public employment context are limited to "extreme cases, such as a government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997-97 (9th Cir. 2007) (*aff'd*, 553 U.S. 591 (2008) (internal quotation omitted). In other words, the Ninth Circuit tracks the conclusions of "the great majority" of other courts to examine the issue, which have rejected a constitutional right to continued public employment in a particular position. *See, e.g*, *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142-43 (3rd Cir. 2000). Stated differently, one does not have a constitutional right to a specific job or position, but only to "a liberty interest in pursuing an occupation of one's choice." *Engquist*, 478 F.3d at 997.

As Plaintiff is currently employed by the Marion County Sheriff's Office, he has not been blacklisted from an occupation in law enforcement. Plaintiff has no liberty interest in his right to a specific position, such as his former position as a patrol officer. Instead, Plaintiff has the right to engage in his chosen occupation of law enforcement. As he is currently employed in that occupation, Plaintiff's substantive due process claim fails.

Plaintiff's argument that his unsuccessful applications for employment with other law enforcement agencies demonstrates he is blacklisted is meritless. Plaintiff produced evidence of unsuccessful applications with the Portland and Bend police departments after his placement on the *Brady* list. The Portland department declined to hire Plaintiff not because of his placement on

6 – OPINION AND ORDER

the *Brady* list but because Plaintiff admitted to violations involving the use of the law enforcement database for personal reasons. Weiner Decl. Ex. 5, 36. The Bend department declined to hire Plaintiff but did not provide a reason for rejecting Plaintiff's application. Weiner Decl. Ex. 6, 46. The record thus consists of one unsuccessful application that, when viewed in the light most favorable to Plaintiff, is due to Plaintiff's inclusion on the *Brady* list.

Providing evidence of one unsuccessful application with another law enforcement agency falls far short of establishing one is blacklisted from a career in law enforcement. *See Tillotson v. Dumanis*, 567 F. App'x 482, 483 (9th Cir. 2014) (noting "only four" rejected applications following placement on a *Brady* list fell "far short of establishing a complete prohibition" on obtaining employment in law enforcement") (internal brackets omitted). As the record does not support a conclusion that Plaintiff is blacklisted from engaging in his chose profession of law enforcement—and in fact demonstrates the opposite—his substantive due process claim fails.

### III.     Plaintiff's Equal Protection Claim

Plaintiff argues Defendants violated his right to equal protection because while he was investigated for dishonesty, Defendants undertook no similar investigation when alerted to complaints that Cunningham, who conducted Plaintiff's internal investigation, was dishonest in the course of Plaintiff's investigation. This "class-of-one" theory, however, is not cognizable in the public employment context. *Engquist*, 553 U.S. at 598 (holding "that the class-of-one theory of equal protection does not apply in the public employment context."). The "government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Id.* at 599. The Supreme Court concluded:

> Thus, the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in

7 – OPINION AND ORDER

> the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

*Id.* at 605.

As Plaintiff acknowledges he is not a part of any protected class, his equal protection claim based on the allegation that he was treated differently than another Sheriff's Office employee necessarily fails.

### IV. Plaintiff's Continued Placement on the *Brady* List

Whether as part of any or all of the above federal claims, Plaintiff argues his continued placement on the *Brady* list is an ongoing violation of his constitutional rights. The Court disagrees.

The Marion County District Attorney, and not any Defendant in this action, made an independent decision to place Plaintiff on the *Brady* list. The District Attorney testified:

> And frankly, in many respects, the employment determination has absolutely zero to do with our Brady determination. . . . [O]ur Brady decision is separate and distinct from any employment consideration . . . . Based on all the information we had with regard to Mr. Lane at this juncture, we believed him to be dishonest. We frankly believed that he violated criminal law. We just could not prove it to the standard necessary in a court of law, and therefore we did not need further information. We did not need that to be ferreted out further. We were confident in our decision as of August 29th of 2018.

Weiner Decl. Ex. 1, 2-3.

The District Attorney noted that although Defendants informed her of the arbitration order, it did not alter the decision to place Plaintiff on the *Brady* list:

> My recollection is that they complied with the order—as I reviewed it, which is they had—they were required to ask us to either review the decision or even change the decision. They were very careful about complying with the order. That is my recollection.

8 – OPINION AND ORDER

> And at the time, again, we were—we were provided with their copy of it. So we did look at it and review it. And we were afforded an opportunity to read it there. We didn't take a copy. I don't have it. But—but my recollection is they were—they were complying with what they had been ordered or required to do. And we responded to them specifically, "Thank you for notifying us of this, but it does not change our Brady determination."

Weiner Decl. Ex. 1, 5-6.

The District Attorney provided clarification on her thought process in regard to Plaintiff's placement on the *Brady* list:

> So there's multiple levels of conduct with Mr. Lane, but first of all, the conduct, it—the actual conduct while on duty in a police car as observed by members of the public, of him escorting his girlfriend home, because even by his own admission that was inappropriate and official misconduct level conduct.
>
> His own admission was such that her headlights were out or would intermittently go out, and so he needed to follow her home. That, in and of itself, to me, is fraught with untruthfulness. I don't know why you would need to follow someone home if their headlights are out. Seems like you would want to be in front of them to help them see their way through the darkness. And yet that, in and of itself, is an admission of official misconduct and really an abuse of his role as a police officer to be escorting his girlfriend home.
>
> Then, secondarily to that, it is our belief, and it was the finding of the Sheriff's office and—and my determination, as well as Mr. Beglau's that Mr. Lane lied about that behavior in subsequent interviews, which were Garrity-compelled and therefore not something we could use in a criminal prosecution, but nonetheless, that he was dishonest in those—in those circumstances as well.

Weiner Decl. Ex. 1, 11-12.

The District Attorney "fundamentally disagreed with" the arbitrator's decision. Weiner Decl. Ex. 1, 14. Ultimately, the District Attorney stated she "made an independent, separate interpretation and assessment of this case in this investigation. What a third party thinks about is not relevant to my decision-making." Weiner Decl. Ex. 1, 15.

As the District Attorney made an independent analysis of Plaintiff's conduct, Plaintiff's continued placement on the *Brady* list cannot establish any violation of Plaintiff's constitutional rights by any of the Defendants named in this action.

V. **Plaintiff's State Law Claims**

Plaintiff brings state law claims for wrongful discharge, defamation, and intentional infliction of emotional distress against the county.[2]

In Oregon, a Plaintiff bringing a wrongful discharge claim states a claim "(1) when the discharge is for exercising a job-related right that reflects an important public policy; or (2) when the discharge is for fulfilling some important public duty." *Babick v. Oregon Arena Corp.*, 333 Or. 401, 407 (2002) (internal citations omitted). Although Plaintiff argues that his termination was wrongful because he was never made "whole," he makes no argument or allegation that his termination was related in any way to the fulfillment of any public duty or policy. Therefore, even accepting that Plaintiff was never made whole, his wrongful discharge claim fails.

Plaintiff's defamation claim fares no better. It is undisputed that any statements made by Cunningham (in the report) or Meyers (in sending the report to the District Attorney) occurred in the course of their official duties. Therefore, their statements are entitled to absolute immunity. *Chamberlain v. City of Portland*, 184 Or. App. 487, 386-87 (2002).

While this is admittedly a narrow privilege, it applies under the narrow facts at issue. Oregon Courts have extended absolute immunity to police officers conducting an internal investigation and report. *Johnson v. Brown*, 193 Or. App. 375, 385 (2004) (discussing *Chamberlain* and noting officer was entitled to absolute immunity as to a defamation claim when

---

[2] Plaintiff agrees that under the Oregon Tort Claim Act, he may not bring the state claims against the individually-named defendants. Resp. 32-33.

10 – OPINION AND ORDER

officer "was required, as part of her job duties, to prepare a written report describing the plaintiff's conduct on an assignment that the two officers had jointly undertaken."). Additionally, any statements made to the District Attorney are entitled to absolute immunity due to the quasi-judicial nature of such statements. *Id.* at 381 (noting "Communications protected by absolute privilege include those made in the course of, or sufficiently incidental to, judicial and quasi-judicial proceedings[.]").

Finally, a Plaintiff bringing an IIED claim must establish, amongst other things, that the "defendants' conduct constitutes extraordinary conduct which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior." *Kraemer v. Harding*, 159 Or. App. 90, 110 (1999) (internal quotations and citations omitted). Plaintiff argues:

> Defendants persist in their belief Plaintiff was untruthful and discount the fact-finding hearing at arbitration as just the opinion of the arbitrator. District Attorney Clarkson also persists in her belief Plaintiff was untruthful which is prima facie evidence Defendants acted with insufficient diligence in correcting her. A logical inference a jury could make is that Defendants never intended to correct the record, even knowing exactly how damaging the label of untruthfulness is to a law enforcement officer.

Resp. 38.

As demonstrated above, Defendants provided the District Attorney with the arbitrator's decision. The District Attorney made an independent decision to keep Plaintiff on the Brady list. As noted, the District Attorney believed Plaintiff's explanation of tailing, as opposed to leading, his girlfriend home due to a broken headlamp, indicated Plaintiff was being untruthful. That the District Attorney was not swayed by the arbitrator's findings does not somehow mean the Defendants' own actions were beyond the reaches of acceptable behavior. And though Plaintiff believes Cunningham's internal investigation was not as fair or thorough as Plaintiff would have liked, the actions do not rise to the level necessary to support a claim of intentional infliction of

11 – OPINION AND ORDER

emotional distress. *See McManus v. Auchincloss*, 271 Or. App. 765, 782 (2015) (noting Plaintiff bringing IIED claim must establish "that defendant's actions constitute the sort of aggravated acts that violate social norms in the workplace beyond all civilized behavior.").

### VI.    Plaintiff's Request for Leave to Amend

Plaintiff acknowledges he fails to adequately state a claim under the First Amendment or under his "class of one" equal protection claim. Realizing this, Plaintiff seeks leave to file an amended complaint. The time to file an amended complaint, however, passed nearly one year ago. ECF No. 2. Discovery closed months ago. The parties deposed the witnesses long ago. Leave to amend in these circumstances is disfavored. "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings. *Wasco Prods. Inc. v. Southwall Techs, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990). Allowing Plaintiff to file an amended complaint would be unduly prejudicial to the Defendants. A response to summary judgment is not the appropriate time to alert the Court and the Defendants that Plaintiff wishes to proceed on a theory that Defendants retaliated against Plaintiff for engaging in the grievance process.[3] Were it not for a global pandemic, this case would have been tried already. Simply put, it is far too late for Plaintiff to file an amended complaint based on new theories.

/ / / /

/ / / /

/ / / /

/ / / /

---

[3] Additionally, leave to amend would likely be futile, as filing a grievance and proceeding to arbitration is not a matter of public concern entitled to First Amendment protections. *Heidt v. City of McMinnville*, No. 3:15-CV-00989-SI, 2017 WL 2432150, at *5-6 (D. Or. June 5, 2017).

12 – OPINION AND ORDER

## CONCLUSION

Defendants' motion for summary judgment, ECF No. 25, is GRANTED.

IT IS SO ORDERED.

DATED this 17th day of September, 2020.

_____/s/ Micahel J. McShane_____
Michael McShane
United States District Judge